IC

RECEIVED

GMC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DEC 18 2025

LANETTA THOMAS,
Plaintiff,

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

v.

CITY OF CHICAGO;
LINCOLN HAYES, in his individual and official capacity as City Council Sergeant of Arms;
ALDERMAN JESSICA FUENTES, in her individual and official capacity,
Defendants.

COMPLAINT

1:25-cv-15377
Judge LaShonda A. Hunt
Magistrate Judge Beth W. Jantz
RANDOM / Cat 2

Plaintiff Lanetta Thomas states as follows:

## JURISDICTION AND VENUE

1. This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.
2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.
3. Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to this action occurred in Chicago, Illinois, within this District.

## PARTIES

4. Plaintiff Lanetta Thomas is a resident of Chicago, Illinois and a member of the public who regularly attends and participates in Chicago City Council and committee meetings.
5. Defendant City of Chicago is a municipal corporation responsible for the policies, customs, training, supervision, and conduct of City Council members and Sergeants of Arms.
6. Defendant Lincoln Hayes is the City Council Sergeant of Arms and at all relevant times acted under color of state law.
7. Defendant Alderman Jessica Fuentes is an elected Chicago City Council member and at all relevant times was a member of the Committee on Immigration and Refugee Rights, acting under color of state law.

## FACTUAL ALLEGATIONS

8. Chicago City Council meetings and committee meetings are open to the public and constitute designated public forums for observation, participation, and speech.
9. Rules governing decorum, time limits, and speaker access must be enforced uniformly, truthfully, and without retaliation, intimidation, or viewpoint discrimination.

October 16, 2025 Incident

10. On October 16, 2025, Plaintiff attended a meeting of the City Council Committee on Immigration and Refugee Rights.
11. Defendant Fuentes was not the chair of the committee and did not possess authority to order removal or enforcement actions against members of the public.
12. During or after the meeting, Defendant Fuentes falsely told a Sergeant of Arms that Plaintiff had called her a bitch.
13. Plaintiff did not make this statement and did not engage in disruptive or disorderly conduct.
14. Defendant Fuentes made the false accusation for the purpose of provoking enforcement action and suppressing Plaintiff's participation in the public forum.
15. Plaintiff was not removed from the meeting; however, the false accusation constituted an attempted misuse of enforcement authority.
16. Plaintiff was informed the following day that Defendant Fuentes was not the committee chair and lacked authority to direct enforcement actions.
17. Defendant Fuentes's conduct placed Plaintiff at risk of removal, discipline, or future retaliation and chilled Plaintiff's continued participation in City Council proceedings.

December 16, 2025 Incident

18. On December 16, 2025, Plaintiff lawfully addressed the Chicago City Council during public comment on matters of public concern.

19. Plaintiff briefly exceeded her allotted speaking time.

20. Defendant Hayes approached Plaintiff while she was still speaking and moved into her immediate personal space in an intimidating manner.

21. Plaintiff raised her hand defensively to create distance and move Defendant Hayes out of her personal space.

22. While encroaching on Plaintiff and making physical contact, Defendant Hayes repeatedly stated don't touch me despite being the individual initiating the proximity.

23. Defendant Hayes's conduct was aggressive, intimidating, and unnecessary.

24. After the meeting, in a public hallway inside City Hall, Defendant Hayes approached Plaintiff and stated don't touch me again I'm gonna knock your ass out.

25. This statement constituted a credible threat of physical violence made by a government official acting under color of law.

26. Plaintiff responded defensively that if Defendant Hayes touched her again she would defend herself.

27. Plaintiff's response was not a threat but an assertion of self-defense after being threatened.

28. Defendant Hayes escalated the encounter by stating Plaintiff would be locked up, invoking his authority as a City official.

29. Plaintiff stated Defendant Hayes had threatened her first and reiterated her right to defend herself if physically attacked.

30. Plaintiff did not initiate physical violence or act aggressively at any time.

December 17, 2025 Retaliation and Selective Enforcement

31. On December 17, 2025, Plaintiff again addressed the City Council during public comment.

32. On that date, approximately 20 individuals signed up to speak.

33. The City permitted only 15 individuals to speak despite having additional willing participants.

34. One individual's name was entered into the public comment lottery twice and was selected twice.

35. City officials recognized the duplicate entry and removed one instance.

36. Even after identifying the defect, the City did not permit another speaker to fill the vacated slot.

37. Immediately upon the expiration of Plaintiff's speaking time, Defendant Hayes physically removed Plaintiff's microphone while she was speaking.

38. During the same meeting, other speakers were permitted to exceed their allotted time without interruption.

39. Plaintiff was the only speaker subjected to physical silencing.

40. Defendant Hayes's actions occurred one day after Plaintiff asserted her right to personal safety and were retaliatory.

Public Comment Lottery System

41. The City of Chicago inconsistently applies a lottery system to determine public comment speakers.

42. On some days, the City uses a lottery, while on other days it allows open public comment without a lottery.

43. The City has no clear, publicly articulated standards governing when the lottery will be used or how it will be administered.

44. This inconsistent application grants City officials discretion over access to speech.

45. The lottery system lacks safeguards against duplicate entries, coordinated flooding of the speaker pool, and no-show speakers.

46. Individuals supportive of City leadership frequently enter the lottery in large numbers, inflating the speaker pool.

47. Some selected individuals fail to appear to speak.

48. When selected speakers do not appear, the City does not return unused speaking slots to the lottery or allow other willing participants to speak.

49. This practice artificially reduces public participation and disproportionately suppresses dissenting viewpoints.

50. Plaintiff has been harmed by this system through loss of opportunity to speak and exclusion from meaningful civic participation.

Pattern and City Ratification

51. The October 16 false accusation, the December 16 threat, the December 17 retaliation, and the defective lottery administration demonstrate a pattern of retaliatory conduct and misuse of authority.

52. These incidents involved multiple officials and enforcement personnel.

53. The City of Chicago failed to intervene, discipline, retrain, or correct this conduct.

54. The City's inaction constitutes ratification of unconstitutional behavior.

## INJURIES

55. As a direct result of Defendants' conduct, Plaintiff suffered emotional distress, fear for personal safety, humiliation, intimidation, chilling of protected political speech, and exclusion from civic participation.

## CLAIMS FOR RELIEF

Count I First Amendment Retaliation and Viewpoint Discrimination

56. Plaintiff engaged in protected speech and participation in designated public forums.
57. Defendants retaliated against Plaintiff through false accusations, threats, intimidation, selective enforcement, and physical silencing.
58. Defendants' conduct would deter a person of ordinary firmness from continuing civic participation.
59. Defendants violated Plaintiff's First Amendment rights.

Count II Fourteenth Amendment Equal Protection Selective Enforcement

60. Plaintiff was treated differently from similarly situated individuals.
61. Defendants selectively and discriminatorily applied enforcement mechanisms without rational basis.
62. Defendants violated the Equal Protection Clause.

Count III Fourth Amendment Threat of Force and Unreasonable Seizure

63. Defendant Hayes's physical encroachment and threat of violence constituted an objectively unreasonable show of force under color of law
64. Plaintiff's defensive verbal response does not justify Defendant Hayes's conduct.
65. Defendant Hayes violated Plaintiff's Fourth Amendment rights.

Count IV Municipal Liability Monell Claim

66. Defendants acted pursuant to customs, practices, and failures to train or discipline.
67. The City of Chicago's ratification and deliberate indifference were the moving force behind Plaintiff's injuries.

QUALIFIED IMMUNITY

68. The constitutional rights at issue were clearly established at all relevant times
69. No reasonable official would believe Defendants' conduct lawful.

PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendants as follows:

a. Compensatory damages in the amount of $250,000.00 against all Defendants jointly and severally;
b. Punitive damages in the amount of $250,000.00 against Defendant Lincoln Hayes in his individual capacity;
c. Declaratory judgment that Defendants violated Plaintiff's constitutional rights;
d. Injunctive relief prohibiting retaliatory, selective, and intimidating enforcement of meeting and public comment rules;
e. Costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988;
f. Such other relief as the Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.